UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

R.P. (XXX-XX-1478)                       CIVIL ACTION NO. 14-cv-0681

VERSUS                                      JUDGE FOOTE

CAROLYN W. COLVIN, COMMISSIONER     MAGISTRATE JUDGE HORNSBY
SOCIAL SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

       R.P. ("Plaintiff") was 45 years old and working as a cashier at a Dollar General Store when she was involved in a car accident on August 16, 2011. Plaintiff applied for disability benefits and alleged that she was unable to work since the date of the accident, primarily because of back pain. ALJ Francine L. Applewhite conducted a hearing and issued a decision that denied the claim. The Appeals Council denied a request for review. The ALJ's decision then became the Commissioner's final decision.

       Plaintiff filed this civil action to seek judicial review of the Commissioner's decision. Plaintiff argues that the ALJ was wrong to (1) favor the opinion of a consulting physician over evidence from treating physicians, (2) find that the results of physical exams were normal, (3) discount Plaintiff's credibility, and (4) find that Plaintiff is not disabled despite evidence that shows she cannot perform any work. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is "exceedingly deferential" and limited to two inquiries: (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the ALJ applied the proper legal standards when evaluating the evidence. Taylor v Astrue, 706 F.3rd 600, 602 (5th Cir. 2012). "Substantial evidence is enough that a reasonable mind would support the conclusion." Id. It "must be more than a scintilla, but it need not be a preponderance." Leggett v. Chater, 67 F.3d 558, 564 (5th Cir.1995). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

A driver who was talking on a cell phone entered the road in front of Plaintiff, and Plaintiff hit the other car in the rear. Plaintiff was able to drive her car home. The next day, she went to a physician and complained of spine pain from her neck to the lumbar area. Medications were prescribed. Tr. 212-14.

Plaintiff was examined by Dr. Bryan Mills. The examination indicated tenderness of the neck and trapezius muscles with "markedly decreased range of motion of the cervical spine." Reflexes of the legs were "normal," and straight-leg raises (used to help diagnose a herniated disc) were "essentially normal." Plaintiff had good grip strength in both hands. X-rays showed that the soft tissues appeared normal, and there was no evidence of fracture,

subluxation or dislocation. Dr. Mills prescribed Lortab and referred Plaintiff to physical therapy. Tr. 219-20.

Plaintiff returned about a week later on August 25, 2011. She had "some decreased range of motion of the cervical spine," and her straight-leg raises were "somewhat painful" at about 35 degrees. Tr. 221. By September 7, 2011, Dr. Mills wrote that Plaintiff was "making slow and gradual improvements." Straight-leg raises were not painful until about 45 degrees. Reflexes were normal. Medications were adjusted, and an MRI was ordered. Tr. 222.

Plaintiff reported on September 16, 2011 that she had been going to physical therapy that had "helped somewhat," but she continued to have "considerable low back pain" that was radiating somewhat into her right leg. Dr. Mills wrote that the MRI showed L5 - S1 disc disease with bulging and moderately severe lower foraminal stenosis on the right side. Dr. Mills recommended physical therapy continue and that Plaintiff be evaluated by an orthopedist. Tr. 224.

Plaintiff visited the office of Dr. Euby Kerr, III, an orthopedic specialist, on October 4, 2011. On physical exam, straight-leg test was negative, but it did produce lower back pain. Motor function was 5/5 in the legs, and sensation was intact in both. A FABER exam, which is designed to screen for musculoskeletal pathologies in the hip and lumbar areas, was negative bilaterally. A diagnostic of the lumbar spine showed retrolisthesis at L4-5 and 90 percent disc collapse at L5 - S1. An MRI revealed a far lateral tear on the left at L4-5 and right far lateral tear on L5 - S1 with the right L5 - S1 lateral recess stenosis and disc

degeneration at L5 - S1. Kerr's recommendation was two epidural steroid injections at L5 - S1. Tr. 216-17.

Plaintiff returned to Dr. Kerr on November 16, 2011 and reported that she continued to have low back pain with occasional pain that radiated down her right leg. She reported that physical therapy had been tried but did not provide much relief. Kerr offered an injection, but Plaintiff did not want to proceed. He discussed surgery, but she did not want to entertain it. Plaintiff said that Lortab occasionally helped with her pain. Motor function was 5/5 in the lower extremities. Straight-leg test was negative but did produce low back pain. Kerr referred Plaintiff to the pain management division. Tr. 218.

Plaintiff told Dr. Mills at a December 14, 2011 visit that she preferred not to have injections done at Dr. Kerr's facility because of financial issues. Plaintiff had some tenderness of the back, but her reflexes and straight-leg raises were normal. Dr. Mills administered an injection of Celestone and lidocaine. Tr. 225.

Plaintiff reported on December 29, 2011 that the injection did not really help her, but she was planning to see Dr. Adair about a spinal injection. Physical examination was about the same as at the prior visit. Plaintiff stated that she had been released from physical therapy some time back. Tr. 226. Dr. Mills found Plaintiff to be about the same at January 12, 2012 visit. Tr. 227.

Dr. Adair administered an epidural steroid injection in late January 2012, with a second injection in early February 2012. Tr. 232-35. Plaintiff saw Dr. Mills a few days after the second injection and reported that the injections had "not really helped much." Her only

complaint at that visit was low back pain, and she did exhibit "some pain" with straight-leg raises. Plaintiff declined physical therapy and said it had actually made her hurt more, so that she did not want to return. Tr. 239.

It appears the record includes only two physical therapy reports. The first is an initial assessment in August 2011 that predicted Plaintiff would benefit from therapy and had good potential for essentially full resolution. Tr. 248. The other is a report from mid-September 2011 that stated that Plaintiff was moving a little better but still had pain. She was making "slow but steady progress" with the therapy program. Tr. 243.

Plaintiff testified at her hearing in October 2012 that she continued to experience back pain at an average of seven or eight on a ten scale, plus shooting pain down her right leg that occurs three or four times a day for durations of about two minutes each time. She said no position was comfortable, and sitting made her legs go to sleep. Tr. 27-30.

Plaintiff said that the injections did not help at all. She estimated that she could stand for 15 to 20 minutes at a time, for a total of perhaps four hours in a workday. She estimated that she could sit for 15 to 20 minutes at a time for another four hours. Tr. 30, 37-39. She said Dr. Kerr had offered surgery, but she declined it for financial reasons and because there was only a chance that it would help. She also recounted that carpal tunnel surgery on both wrists in the early 90s had initially been successful, but her symptoms had returned so that she had tingling and numbness in her hands that she rated at about a two or three. Tr. 29-32.

After the hearing, the ALJ referred Plaintiff for a consultative evaluation by Dr. James Zum Brunnen, an orthopedic physician. The consultative physician reviewed the reports

from Dr. Kerr and those regarding the epidural injections. His physical examination found a full range of motion of the cervical spine. Plaintiff tended to withdraw somewhat and seemed to actively limit the flexion and extension of the lumbar spine. Straight-leg raising was negative bilaterally, reflexes were normal, and there was no motor weakness in the legs. Dr. Zum Brunnen also reviewed X-rays of the spine. He observed that nothing had seemed to help Plaintiff with her pain, "which does seem to be somewhat out of proportion to what demonstrated pathology is." He believed it advisable that Plaintiff have "some restriction of her back activities in any employment" and should limited to light work with alternate walking, standing, and sitting during the day. Tr. 257-58.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim under the five-step analysis established in the regulations. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007). She found that Plaintiff had not engaged in work activity since her alleged onset of disability (step one) and suffered from degenerative disc disease that was a severe impairment (step two) within the meaning of the regulations, but not so severe as to meet the requirements of a listing (step three) that would require a finding of disabled without further analysis. The ALJ found that impairments of hypothyroidism, carpal tunnel syndrome, depression, and anxiety were not severe impairments because they had such minimal affect on Plaintiff that they would not be expected to interfere with her ability to work. Tr. 12.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"), which is the most the claimant can do despite her limitations. The ALJ found that Plaintiff could perform

light work[1] except that she could not climb ladders, ropes, or scaffolds, could only occasionally engage in activities such as stooping or kneeling, occasionally climb stairs or ramps, could have no exposure to unprotected heights or heavy machinery, and would need to sit/stand at will. Tr. 14.

The ALJ turned to step four, which asks whether the claimant is capable of performing her past relevant work. A vocational expert testified at the hearing that a person with Plaintiff's RFC, age, and background could perform the demands of two of her past jobs: receptionist (sedentary) or office clerk (light). Tr. 48-49. The ALJ accepted that testimony and found at step four that Plaintiff was not disabled.

**Weight of Medical Opinion**

Plaintiff argues that the ALJ incorrectly gave more weight to the opinion of the consulting examiner, Dr. Zum Brunnen, than was afforded the opinions of four treating physicians. Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). But the treating physician's opinions are far from conclusive. "[T]he ALJ

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10.

has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

Plaintiff does not point to any particular opinions from any of her treating physicians about how her back problem would limit her ability to work. The treating physicians generally noted that Plaintiff had a spinal problem and reported the results of their examinations and tests, but they did not complete a functional capacity assessment or offer any other comments about Plaintiff's ability to sit, stand, lift, or engage in other work activity. That is why the ALJ wrote: "As for the opinion evidence, there are no treating physician opinions." Tr. 15. That is correct and supports her decision to afford great weight to the opinion of Dr. Zum Brunnen. It is the only opinion in the record that sets forth information on which an RFC can be based.

**Physical Exams**

Plaintiff argues that the ALJ incorrectly found that the physical examinations conducted on her yielded normal results. She points to observations from a physical therapist on the intake form that Plaintiff had decreased strength and range of motion (Tr. 248) and the objective fact that the MRI showed disc tears and collapse.

The available medical records were reviewed above and fully support the ALJ's conclusion that Plaintiff "does have objective evidence of degenerative disc disease, but examinations have been consistently within normal limits, except for subjective complaints of pain." The ALJ discussed in detail Dr. Kerr's findings about the disc collapse and tears (Tr. 14), but she noted that straight-leg raise tests were generally negative, and there were no

motor deficits, atrophy, or irregular gait and station. For disability purposes, it is the limitations on a claimant's abilities to engage in work activities, not her diagnosis, that is most important. There is no basis to overturn the Commissioner's decision based on this point.

**Plaintiff's Credibility**

Plaintiff argues that the ALJ incorrectly found her complaints were not credible because Plaintiff declined injections and surgery. Plaintiff explains that she declined the injections because they were ineffective and expensive, and financial considerations and no guarantee of success persuaded her not to have surgery.

An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on her first-hand observation of the claimant, are particularly within her province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ found that the medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons set forth in the decision.

The ALJ's reasons did include a statement that Plaintiff had "also refused certain treatment, including continued injections and surgery," but that was not the only reason Plaintiff's credibility about the extent of her limitations was discounted. The ALJ primarily pointed to the normal physical exams. She also mentioned that it was unclear whether Plaintiff completed physical therapy, treatment had been scant, and Dr. Zum Brunnen had

seen signs compatible with malingering or pain magnification. Tr. 15. Plaintiff is correct that she did offer explanations for declining treatment, but that does not mean the ALJ's overall assessment of the weight of her testimony must be overturned by the court. The ALJ offered enough valid reasons for her assessment to withstand the rather lenient judicial scrutiny afforded a credibility assessment.

**Ability to Work**

Plaintiff makes numerous arguments under the heading of her final issue, which is a broad attack on the Commissioner's decision. For example, Plaintiff argues that her bilateral carpal tunnel syndrome prevents her from using her upper extremities on more than an occasional basis. She cites Dr. Zum Brunnen's assessment (Tr. 261) which found that Plaintiff could frequently or occasionally perform various activities with her right and left hands. Plaintiff claims that such restrictions eliminate her ability to perform most light and sedentary work, but she points to no testimony from the VE or other explanation for why those limitations would prevent her from performing the demands of receptionist or office clerk.

Plaintiff testified that she fractured her tibia and fibula in 2002 and required a metal rod in her leg. She said that it hurt whenever it rains or gets cold. Tr. 36. Dr. Zum Brunnen noted that Plaintiff had a stiff ankle, probably as a result of that injury. Tr. 257. Plaintiff argues that this condition, combined with her back injuries, prevents her from being able to sit or stand long enough to perform sedentary or light work. Dr. Zum Brunnen, however,

was fully aware of the condition and nonetheless found that Plaintiff could sit/stand/walk during a workday if allowed alternate positions. Tr. 258.

Plaintiff next points to her hypothyroidism, insomnia, and migraines. She cites no medical evidence that indicates these conditions meaningfully interfered with her ability to work during the relevant time. The ALJ noted that the hypothyroidism was controlled by medication. Tr. 13. Plaintiff stated at the hearing that she had always suffered from insomnia, even when she worked. Plaintiff cites only Exhibit 1-F (Tr. 212-4) as evidence of migraines, but that initial report on the day after the accident merely mentioned migraines along with other issues in the past medical/surgical history portion of the report. There is no medical evidence that migraines interfered with Plaintiff's work abilities during the relevant time.

Plaintiff argues that she suffers from panic attacks multiple times per month that last up to an hour even with medications. Those attacks, she says, would require too many work breaks to allow employment. Plaintiff cites no record evidence to support this contention.

Plaintiff also argues that she would have to take frequent work breaks to recline and rest her leg, could not stand and sit for a combination of eight hours, and would have to be absent one or more days per month because of her medical problems. These arguments are a repeat of the above-discussed attacks on the ALJ's assessment of the medical evidence and testimony. There is more than substantial evidence to support the ALJ's well-reasoned conclusions about Plaintiff's rather limited ability to work.

Plaintiff acts as if the ALJ ignored her medically established spine problems and pain. She did not. She recognized the problems and found that they limited Plaintiff to no more than light work, subject to several additional limitations, including a requirement that Plaintiff be allowed to sit and stand at will. That is a very limited RFC that is entirely consistent with the consultative medical examiner's opinion and the other medical records in evidence. There were credible evidentiary choices or medical findings to support the ALJ's determination, so it must be affirmed.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of October, 2014.

Mark L. Hornsby
U.S. Magistrate Judge